IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

RICHARD A. DEAN,

Petitioner,

vs.

A.P. KANE, Warden,

Respondent.

No. C 06-2511 JSW (PR)

**ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS**

**INTRODUCTION**

Petitioner Richard Dean, a prisoner of the State of California, has filed a habeas corpus petition pursuant to 28 U.S.C. § 2254 challenging the Board of Prison Terms ("BPT") denial of parole during parole suitability proceedings in 2003. This Court ordered Respondent to show cause why a writ should not issue. Respondent filed an answer, memorandum and exhibits in support thereof. Petitioner has filed a traverse. For the reasons stated below, the petition is denied on the merits.

**BACKGROUND**

In 1991, in Los Angeles County Superior Court, Petitioner plead guilty to second degree murder. The trial court sentenced him to a term of fifteen years to life in state prison. Petitioner's minimum parole eligibility date was December 9, 2000. In this habeas action, Petitioner does not challenge his conviction or sentence, but instead alleges that his due process rights were violated by the denial of parole by the BPT during a subsequent parole suitability hearing on August 7, 2003.

The BPT relied, in part, upon the following account of Petitioner's commitment offense from his probation report:

> On the date of the offense [December 8, 1990], in the county of Los Angeles, the defendant murdered Eric Larson. Furthermore defendant personally used a handgun.
>
> The victim in this case, a male adult, was residing with the defendant's estranged wife, Sandra Dean. In the early morning hours of the offense, the defendant showed up with a handgun, argued with the victim, and then proceeded to shoot the victim at least twice, mortally wounding the victim.
>
> The defendant then left the scene, and sheriff's deputies trailed him until they located him at Mc Donald's [sic] restaurant in Palmdale where they apprehended him outside of the restroom. They subsequently recovered the handgun plus numerous unexpended shells.
>
> It turned out that the gun was stolen from the defendant's father-in-law's house in Littlerock [sic] shortly before the offense. The handgun was identified as a Ruger .357 Magnum but the shells used were .38 caliber shells.

(Respondent's (hereinafter "Resp.") Exhibit (hereinafter "Ex.") 5 at 5; Resp. Ex. 8 at 2.) Petitioner agreed with the facts in the record and added his own perspective:

> Well, it happened under a diminished capacity that I was under at the time. I was under a lot of stress and I called and I talked to my kids, and the victim told me on the phone that he wouldn't let me talk to my kids because I wasn't their father anymore. And he slammed the phone down. The next thing I remember was going in the backyard, arguing with him. And I basically snapped and I don't recall too much of what transpired from the time I snapped until the time I actually realized that I had shot him.

(Petitioner's (hereinafter "Pet.") Ex. A, Resp. Ex. 5 at 8-9.)

The Board relied on Petitioner's record as detailed in the May 2003 Life Prisoner Evaluation Report. (Pet. Ex. A, Resp. Ex. 5 at 13; *see* Resp. Ex. 9.) This included a 1975 juvenile commitment to the Youth Authority, from which he went AWOL and obstructed a peace officer. (Pet. Ex. A, Resp. Ex. 5 at 13-14; Resp. Ex. 9 at 3.) As an adult, Petitioner was convicted once for possession of a controlled substance and twice for drunk driving. (Pet. Ex. A, Resp. Ex. 5 at 14; Resp. Ex. 9 at 3.)

The BPT discussed Petitioner's "post-conviction factors," which commenced with

a review of the period between his last hearing, May 24, 2002 and the present hearing. (Pet. Ex. A, Resp. Ex. 5 at 14.) Petitioner's classification score per the mandatory minimum was 19, and he had recently incurred a serious disciplinary infraction "115" on March 7, 2002 for possession of inmate-manufactured alcohol. (*Id.* at 15-16.) Petitioner's prior serious disciplinary infraction was for mutual combat, a fist fight, on December 30, 1992, for which he was sentenced to 90 days loss of credit. (Resp. Ex. 9 at 4.)

The BPT considered Petitioner's exceptional work reports from his job as a post order clerk and satisfactory work reports from his job as a cook. (Pet. Ex. A, Resp. Ex. 5 at 15.) They also considered Petitioner's positive "128B" general chrono in which the correctional sergeant assigned to the CTF North Culinary Second Watch, where Petitioner has worked for nine months, noted that "he has demonstrated an outstanding ability to perform his assigned task." (*Id.* at 17.) Petitioner had also participated in various self-help programs, including Alcoholics Anonymous. (*Id.* at 16.)

The BPT also considered the summary of the Correctional Counselor dated May 14, 2003:

> Considering the commitment offense, prior record, and prison adjustment, the writer believes the prisoner would probably pose a moderate to low degree of threat to the public at this time if released from prison. The CDC 115 rule violation report dated March 7th of 2002 concerns me since alcohol and drugs, according to the inmate's own statement, contributed heavily to the commission of the crime. I think abstinence from drugs and alcohol would be vital to Dean being successful as a minimal risk parolee to the community. Dean has participated in a variety of self-help programs, including Alcoholics Anonymous. In his letter dated May 8, 1999, titled "Why I Believe I Should Be Granted a Parole Date," Dean accepts responsibility and makes no excuses for his crime. He expresses shame, guilt, and a remorse for his crime. He states that he will continue to attend AA in the community. Dean says that he now realizes that alcohol cannot be a part of his life if he is to live as a constructive, productive member of society.

(Pet. Ex. A, Resp. Ex. 5 at 18-19.)

Additionally, the BPT considered Petitioner's most recent psychological

evaluation completed by Dr. Steven J. Terrini, who notes that he "demonstrated substantial insight," displayed "no evidence whatsoever of antisocial personality disorder," and would have a violence potential of "no more than the average citizen in the community." (Pet. Ex. A, Resp. Ex. 5 at 20-21.) However, Dr. Terrini also notes that Petitioner has "significant problems with alcohol and methamphetamines," and that "his violence potential would be considerably higher" if he continued to abuse these substances. (*Id.* at 19-21.) Dr. Terrini recommended upon parole "abstinence from all illegal drugs and alcohol, monitoring, and mandatory attendance at self-help groups such as Alcoholics Anonymous or Narcotics Anonymous." (*Id.* at 21.)

The Board questioned Petitioner about his parole plans, which included his plan to reside at the East Side Recovery Homes, a "sober living environment whose goal is to help men and women with drug and/or alcohol problems that are ready to change their lives." (Pet. Ex. A, Resp. Ex. 5 at 21-22.) Petitioner provided a letter from the director, Ramona Perry, establishing that a bed would be held for him upon his release. (*Id.* at 22.) Petitioner has prior work experience as a heavy equipment operator, a truck driver, and a welder, but had no current offers of employment. (*Id.* at 23.)

The Board also questioned Petitioner about the circumstances of his recent disciplinary infraction for possession of inmate-manufactured alcohol. (Pet. Ex. A, Resp. Ex. 5 at 24-25.) Petitioner admitted that he "fell off the wagon," that he "made a mistake," and that he was "only human." (*Id.* at 25.) He also stated that he could only "do it one day at a time," and that he "realize[s] that [alcohol] can't be a part of [his] life." (*Id.* at 26.)

Deputy District Attorney Botello from Los Angeles County opposed parole based on the circumstances of the crime, Petitioner's "extensive alcohol/drug abuse" history, and his alleged lack of "true remorse." (Pet. Ex. A, Resp. Ex. 5 at 28-29.) The Deputy District Attorney characterized the crime as a "cold, calculated, planned murder." (*Id.* at

29.) Botello also argued that given the "devastating" effect of alcohol on Petitioner's life, his recent alcohol-related rule violation "seriously demonstrated his inability to show that he is ready to be released to the outside world." (*Id.* at 34.) In closing, Petitioner's attorney emphasized his various positive reports during the period of incarceration, his overall progress in dealing with his substance abuse problem, and his stable work history prior to incarceration. (*Id.* at 35.)

After a recess to consider the evidence before it, the BPT found that Petitioner was not suitable for parole and would pose an unreasonable risk of danger to society and a threat to public safety if released from prison. (Pet. Ex. A, Resp. Ex. 5 at 39.) The presiding Commissioner explained that, in deciding to deny parole, the panel considered all of the information received from the public in denying parole. (*Id.*) The Board found that Petitioner's commitment offense was carried out in a "dispassionate manner" which "demonstrates an exceptionally insensitive disregard for human sufferings." (*Id.*) The Board also found that the motive for the crime was "inexplicable or very trivial in relation to the offense." (*Id.*)

Further, the Board found that Petitioner had an escalating pattern of criminal conduct and had "failed to profit from society's previous attempts to correct his criminality." (Pet. Ex. A, Resp. Ex. 5 at 40.) The Board also found that Petitioner had a history of "unstable tumultuous relationships with others" as well as problems with alcohol abuse. (*Id.*) The Board noted that Petitioner had "failed to upgrade vocationally as previously recommended by the Board," and had "not sufficiently participated in beneficial self-help and therapy." (*Id.*) The Board noted Petitioner's recent serious infraction and stated that he had "failed to demonstrate evidence of positive change." (*Id.*) Finally, the Board noted that the District Attorney's office of Los Angeles County and the Sheriff's Department of Los Angeles County had both opposed the granting of parole. (*Id.* at 41.) The Board denied parole for a period of three years, relying on the

above stated reasons. (*Id.*)

Petitioner challenged the BPT's decision in Los Angeles County Superior Court, which issued an unreasoned opinion denying Petitioner's claims. (Pet. Attachment (hereinafter "Att.") 3; Resp. Ex. 2.) The court held only that Petitioner had the burden of establishing grounds for his release, and that he had failed to show a prima facie case for the relief requested. (*Id.*) The California Court of Appeal for the Second Appellate District and the California Supreme Court summarily denied Petitioner's habeas petition on December 15, 2004 and February 1, 2006, respectively. (Pet. Att. 1, 2; Resp. Ex. 3, 4.) Thereafter, Petitioner filed the instant federal petition for a writ of habeas corpus on April 11, 2006.

**DISCUSSION**

A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified under 28 U.S.C. § 2254, provides "the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the petitioner is not challenging his underlying state court conviction." *White v. Lambert*, 370 F.3d 1002, 1009-10 (9th Cir. 2004). Under AEDPA, this court may entertain a petition for habeas relief on behalf of a California state inmate "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The writ may not be granted unless the state court's adjudication of any claim on the merits: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Under this deferential standard, federal habeas relief

will not be granted "simply because [this] court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams v. Taylor*, 529 U.S. 362, 411 (2000).

While circuit law may provide persuasive authority in determining whether the state court made an unreasonable application of Supreme Court precedent, the only definitive source of clearly established federal law under 28 U.S.C. section 2254(d) is in the holdings (as opposed to the dicta) of the Supreme Court as of the time of the state court decision. *Williams*, 529 U.S. at 412; *Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir. 2003).

In determining whether the state court's decision is contrary to, or involved an unreasonable application of, clearly established federal law, a federal court looks to the decision of the highest state court to address the merits of a petitioner's claim in a reasoned decision. *LaJoie v. Thompson*, 217 F.3d 663, 669 n.7 (9th Cir. 2000). If the state court only considered state law, the federal court must ask whether state law, as explained by the state court, is "contrary to" clearly established governing federal law. *See, e.g., Lockhart v. Terhune*, 250 F.3d 1223, 1230 (9th Cir. 2001); *Hernandez v. Small*, 282 F.3d 1132, 1141 (9th Cir. 2002) (state court applied correct controlling authority when it relied on state court case that quoted Supreme Court for proposition squarely in accord with controlling authority). If the state court, relying on state law, correctly identified the governing federal legal rules, the federal court must ask whether the state court applied them unreasonably to the facts. *See Lockhart*, 250 F.3d at 1232.

The standard of review under AEDPA is somewhat different where the state court gives no reasoned explanation of its decision on a petitioner's federal claim and there is no reasoned lower court decision on the claim. In such a case, a review of the record is the only means of deciding whether the state court's decision was objectively reasonable.

*See Plascencia v. Alameda*, 467 F.3d 1190, 1198 (9th Cir. 2006); *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003); *Greene v. Lambert*, 288 F.3d 1081, 1088 (9th Cir. 2002); *Bailey v. Newland*, 263 F.3d 1022, 1028 (9th Cir. 2001); *Delgado v. Lewis*, 223 F.3d 976, 981-82 (9th Cir. 2000). When confronted with such a decision, a federal court should conduct "an independent review of the record" to determine whether the state court's decision was an objectively unreasonable application of clearly established federal law. *Plascencia*, 467 F.3d at 1198; *Himes*, 336 F.3d at 853; *Delgado*, 223 F.3d at 981-82. The federal court need not otherwise defer to the state court decision under AEDPA: "A state court's decision on the merits concerning a question of law is, and should be, afforded respect. If there is no such decision on the merits, however, there is nothing to which to defer." *Greene*, 288 F.3d at 1089. In sum, "while we are not required to defer to a state court's decision when that court gives us nothing to defer to, we must still focus primarily on Supreme Court cases in deciding whether the state court's resolution of the case constituted an unreasonable application of clearly established federal law." *Fisher v. Roe*, 263 F.3d 906, 914 (9th Cir. 2001).

B. Legal Claims and Analysis

Petitioner claims that the BPT's denial of parole in 2003 violated his right to due process. Petitioner also claims that the Deputy District Attorney's opposition to his parole, an alleged breach of Petitioner's plea agreement, violated his right to due process.

1. The BPT Decision

California's parole scheme provides that the BPT "shall set a release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for this individual, and that a parole date, therefore, cannot be fixed at this meeting." Cal. Penal Code § 3041(b). In making this determination, the BPT considers such factors as the prisoner's social

history, the commitment offense and prior criminal history, and his behavior before, during and after the crime. *See* Cal. Code Regs. tit. 15, § 2402(b) – (d).

The record shows, and there is no dispute, that the BPT panel afforded Petitioner and his counsel an opportunity to speak and present their case at the hearing, gave them time to review Petitioner's central file, allowed them to present relevant documents and provided a reasoned decision denying parole. The panel concluded that Petitioner is not suitable for parole and would pose an unreasonable risk of danger to society and a threat to public safety if released from prison.

The panel explained that the commitment offense "demonstrate[d] an exceptionally insensitive disregard for human sufferings" and that the motive for the crime was inexplicable in comparison with the gravity of the offense. (Pet. Ex. A, Resp. Ex. 5 at 39.) The panel noted Petitioner's recent serious infraction for possession of inmate-manufactured alcohol. (*Id.* at 40.) The panel found that Petitioner "still needs therapy in order to face, discuss, understand, and cope with stress in a nondestructive manner," and that "until progress is made [Petitioner] continues to be unpredictable and a threat to others." (*Id.* at 41.) Although the panel commended Petitioner for his participation in various programs, it stated that "these positive aspects of his behavior don't outweigh the factors of unsuitability at this time." (*Id.* at 42.)

2. <u>The State Court Decisions</u>

The state superior court's decision stated that the burden was on Petitioner to establish grounds for his release, and that he had failed to show a prima facie case establishing his right to habeas relief. (Pet. Att. 3; Resp. Ex. 2.) The California Court of Appeal and Supreme Court summarily denied Petitioner's habeas petitions. (Pet. Att. 1, 2; Resp. Ex. 3, 4.)

3. <u>The Federal Right to Due Process</u>

California's parole scheme "gives rise to a cognizable liberty interest in release on

parole" which cannot be denied without adequate procedural due process protections. *Sass v. California Bd. of Prison Terms*, 461 F.3d 1123, 1127 (9th Cir. 2006) (*quoting McQuillion v. Duncan*, 306 F.3d 895, 902 (9th Cir. 2002)). The determination does not depend on whether a parole release date has ever been set for the inmate because "[t]he liberty interest is created, not upon the grant of a parole date, but upon the incarceration of the inmate." *Biggs v. Terhune*, 334 F.3d 910, 914-15 (9th Cir. 2003).

Due process requires that "some evidence" support the parole board's decision finding him unsuitable for parole. *Sass*, 461 F.3d at 1128 (holding that the "some evidence" standard for disciplinary hearings outlined in *Superintendent v. Hill*, 472 U.S. 445, 454-55 (1985), applies to parole decisions in a section 2254 habeas petition); *Biggs*, 334 F.3d at 915 (same); *McQuillion*, 306 F.2d at 904 (same). The "some evidence" standard is minimally stringent and ensures that "the record is not so devoid of evidence that the findings of [the BPT] were without support or otherwise arbitrary." *Hill*, 472 U.S. at 457. Determining whether this requirement is satisfied "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." *Id.* at 455 (quoted in *Sass*, 461 F.3d at 1128). Due process also requires that the evidence underlying the parole board's decision have some indicia of reliability. *Biggs*, 334 F.3d at 915; *McQuillion*, 306 F.3d at 904. In sum, if the parole board's determination of parole unsuitability is to satisfy due process, there must be some evidence, with some indicia of reliability, to support the decision. *Rosas v. Nielsen*, 428 F.3d 1229, 1232 (9th Cir. 2005).

When assessing whether a state parole board's suitability determination was supported by "some evidence," the court's analysis is framed by the statutes and regulations governing parole suitability determinations in the relevant state. *Irons v. Carey*, 505 F.3d 846, 851 (9th Cir. 2007). Accordingly, in California, the court must look to California law to determine the findings that are necessary to deem a prisoner

unsuitable for parole. *Id.* Because there is no reasoned state court opinion in this case, this court must conduct "an independent review of the record" to determine whether the state court's denial of Petitioner's habeas petition was an objectively unreasonable application of clearly established federal law. *Plascencia*, 467 F.3d at 1198.

The recent California Supreme Court case of *In re Lawrence*, 44 Cal.4th 1181 (2008), clarified what California law requires the Board to find in order to deny parole: the Board must find only that the prisoner is a current threat to public safety, not that some of the specific factors in the regulations have or have not been established. *Id.* at 1212. This means that the "some evidence" test is whether there is "some evidence" that the prisoner is a threat, not whether there is "some evidence" to support particular secondary findings of the Board, for instance that the prisoner needs more time for rehabilitation. *Id.*; *see Irons v. Carey*, 505 F.3d 846, 851 (9th Cir. 2007) (when assessing whether a state parole board's suitability determination was supported by "some evidence," the court's analysis is framed by the statutes and regulations governing parole suitability determinations in the relevant state).

There was evidence in the record to support the BPT's determination that Petitioner continued to pose an unreasonable risk of danger to society. First, Petitioner's act of hunting down an unarmed man in his estranged wife's house and shooting the man multiple times provides some evidence of exceptional disregard for human suffering. Second, because the victim did not seriously threaten or provoke Petitioner, the Board has some evidence to support the conclusion that the motive was inexplicable in relation to the gravity of the offense. Finally, given Petitioner's extensive history of drug and alcohol abuse and the strong connection of this abuse to his past crimes, Petitioner's recent alcohol-related infraction in prison provides clear evidence that he presents a current threat to public safety if released. Petitioner did not challenge the validity of any of this evidence, and thus there is no question as to its reliability.

The Court finds that the BPT's reliance on these factors, including the circumstances of the crime and Petitioner's recent serious infraction, constitutes "some evidence" to support the BPT's determination that Petitioner continued to present a risk of danger if released to the public, and consequently that Petitioner was not suitable for parole.

The Ninth Circuit has noted that "over time" the BPT's "continued reliance ... on an unchanging factor," in particular "the circumstance of the offense and conduct prior to imprisonment," would "raise serious questions involving his liberty interest in parole." *Biggs*, 334 F.3d at 916-17. However, in this case the BPT's denial of parole was not only based upon Petitioner's commitment offense. Here there were other supported reasons, described above, for their denial of parole.

Based on this Court's independent review of the record, the state courts' denial of Petitioner's habeas petition was not contrary to or an unreasonable application of clearly established federal law because there was some reliable evidence to support the BPT's denial of parole. Accordingly, habeas relief is not warranted on this claim.

4. Breach of Plea Agreement

Petitioner asserts that his plea agreement was breached when the BPT denied parole because the representative of the Los Angeles County District Attorney's office opposed parole at his hearings in 2000 and 2003, despite the statement of the Deputy District Attorney during his guilty plea that Petitioner would be released on parole "after serving the appropriate amount of time." (Petition at 3, Pet. Ex. H at 7.) He alleges that the district attorney's opposition to his parole violated the plea agreement.

The breach of plea agreement claim is time-barred. "A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court." 28 U.S.C. § 2244(d)(1). A habeas petition by a state prisoner challenging a decision of an administrative body, such as the BPT, is covered by

the statute and the limitations period starts to run from "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)( D); *Shelby v. Bartlett*, 391 F.3d 1061, 1066 (9th Cir. 2003); *see also Redd v. McGrath*, 343 F.3d 1077, 1081-82 (9th Cir. 2003).

Here, the factual predicate or basis of Petitioner's claim that his plea agreement was violated was known to him no later than at the time of his 2000 hearing. He was denied parole at his parole consideration hearing in 2000 after the District Attorney's opposition, meaning the actual breach occurred no later than that date. Yet Petitioner did not file his federal habeas petition challenging the breach of the agreement within the required one-year period, even allowing for the time from 2004 through 2006 that his state habeas petitions were pending. He cannot revive the time-barred claim by asserting that the agreement, which was irrevocably breached in 2000, was breached again in 2003.

However, even if the claim was not barred by the statute of limitations, the breach of plea bargain claim has no merit. "Plea agreements are contractual in nature and are measured by contract law standards." *Brown v. Poole*, 337 F.3d 1155, 1159 (9th Cir. 2003) (quoting *United States v. De la Fuente*, 8 F.3d 1333, 1337 (9th Cir. 1993)). Although a criminal defendant has a due process right to enforce the terms of a plea agreement, there is no evidence that Petitioner's subjective expectations about how parole would be decided were part of the plea agreement. *See Santobello v. New York*, 404 U.S. 257, 261-62 (1971). Although Petitioner clearly feels that he has served an "appropriate amount of time," he has not pointed to any language in any plea agreement that would bar the District Attorney's office from opposing his release on parole in 2003, especially given the recent occurrence of Petitioner's disciplinary infraction for possession of inmate-manufactured alcohol.

Petitioner's sentence upon his conviction based on his plea agreement was to an indeterminate term of fifteen years to life in state prison. He has apparently received the parole consideration at hearings to which he was entitled under that agreement and sentence. Based on this Court's independent review of the record, the Deputy District Attorney's participation in the BPT hearing where Petitioner was denied parole did not violate Petitioner's due process right, and therefore the claim must fail.

**CONCLUSION**

For the reasons set forth above, the petition for a writ of habeas corpus is DENIED. The Clerk shall enter judgment in favor of Respondent and close the file.

IT IS SO ORDERED.

DATED: July 14, 2009

JEFFREY S. WHITE
United States District Judge

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA

RICHARD A. DEAN,

Plaintiff,

v.

A.P.KANE et al,

Defendant.

______________________________/

Case Number: CV06-02511 JSW

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on July 14, 2009, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Richard A. Dean
E87707
P.O. Box 689
Soledad, CA 93960

Dated: July 14, 2009

Richard W. Wieking, Clerk
By: Jennifer Ottolini, Deputy Clerk